Good morning, your honors. May it please the court, Zulu Ali on behalf of appellants Lori Burkhalter and Kirsten Clough. I want to first begin, I think the initial issue is with regards to the attorney fees that were awarded on behalf of the appellee in this particular case. I think the primary issue is whether they would be considered the prevailing party. And I would submit to the court that there is reason that to conclude that the appellee was not a prevailing party in this particular case. I think the standard would be in order to be a prevailing party, the party must achieve a benefit sought in bringing the suit. Now this matter was actually filed in February the 8th of 2019, seeking the support for 2017 all the way up until March of 2019. Of course, based upon the award of the jury in this particular case, which was the 2017 and 2018, neither one of those years was actually awarded to the appellee. But Mr. Ali, she did win for arrears for 2019 and 2020 and in ongoing, enforcing an ongoing obligation to provide support until it's terminated by a court order. Why isn't that sufficient to construe that as having prevailed? Well, your honor, I think it wouldn't be sufficient to have prevailed because I think the key in this particular case is what was being sought at the time of bringing the suit. And what was being sought at the time of bringing the suit was not 2019 and 2020. It was actually 2017 and 2018. That would have been the issues at the time that the suit was being brought. Well, what case would you rely on for the notion that because certain claims didn't prevail and others did, one would not be considered the prevailing party? Well, I think that the language that in Hensley v. Eckerhart, where it says to be a prevailing party, the party must achieve a benefit sought in bringing the suit. And she was trying to seek enforcement of an obligation to pay for arrears and for a continuing obligation for support. And she achieved those things. Well, the obligation, well, it wasn't triggered at the time that she bought the suit. I think that in March and February of 2019, it wasn't triggered. She wouldn't have been entitled. You have any authority that says we're supposed to limit our perspective to the moment that the complaint was filed as opposed to at the time the case is concluded? I'm not aware of any such authority. Well, in the statute, well, we can just go back to the statute. It says for remedies available to enforce an affidavit of support. There was nothing to enforce at the time that the lawsuit was filed. But at the time the fees were awarded, there had been a successful conclusion, at least a partially successful conclusion. I think it's awfully hard to say that somebody who wins the judgment isn't the prevailing party. Now, you can fairly question the quantity or percentage of success, and I think that's a live issue in this case. But to say that there's not a prevailing party, I got to think that's a tough sell. Right. Well, I think that the reasons why, even if it's not persuasive completely with regards to the fact that they were completely a prevailing party, I think that the timeline and the litigation that was involved in this particular case, I think is significant in making the determination as to the reasonableness of the attorney fees that was being awarded. When someone brings, and just quickly, when someone brings a lawsuit in this particular, in a case like this, it's not like she brought a lawsuit and that the defendants actually were trying to defend themselves in a manner in which they were clearly not entitled to be triggered. The defendants were forced to litigate the case because they didn't owe any fees at the time that the suit was brought. As I understand the case, there were two separate questions involved. One is the obligation that came from sponsorship, and the other was whether the plaintiff had earnings that triggered the support obligation. And that's ultimately why the different years were treated differently. Am I correct in that understanding? That is correct, Your Honor. There are two issues in the sponsorship cases where obviously the obligation is only triggered if there is a showing that they did not meet, I think it's 125% of the poverty line, which is an ongoing obligation, obviously, unless there are some other issues which was not found in this particular case. So those are the issues, Your Honor. So because of, and it's illustrated here by the part of the judgment that provides for ongoing support, at the time the complaint was filed, nobody could know what the future would hold for that second question, what the claimant's future earnings would be. So we now have a jury verdict that did award some amount of money to the plaintiff and a continuing obligation. Again, the monetary value of that can't be ascertained because it depends upon what plaintiff's subsequent earnings are. So I understand the argument about whether the fees were reasonable, but one of the assertions made in your brief, I'll just go ahead and make a specific reference to it, I think it's on page 12, there's an allegation that a majority of the hours expended were on the unsuccessful 2017 and 2018 claims alleged in the complaint. That's a quote. There's no record citation there, not many record citations in the brief generally. What could we base such a factual conclusion upon? Well, Your Honor, the factual conclusion on that issue is that the majority of the litigation that took place in this particular case, in other words, up until the discovery, I believe, and this is what I believe, I'm not looking exactly at the register of actions at this time, but I believe the majority of the discovery had been completed in 2020, which would have actually had included 17, 18, and I believe maybe some of 2019, I believe that was the And I believe that all of the, primarily the discovery, the litigation, the motion for summary judgment, I think all those issues had actually transpired and would have been focused primarily on 17, 18, and I believe 2019, which is when the motion for summary judgment had taken place. I think also... Well, remember, we divided the case into two questions. One question is what obligation to support there was, and the second, the calculation of plaintiff's earnings to determine what mathematically would be the support appropriate for each year. Plaintiff must have won on the first question, and that's not necessarily tied to any particular year, so to tell me that you think discovery probably had more to do with the years where nothing was awarded than with the years that something was awarded, that's not real reliable citation to the record, but it also completely ignores the fact that plaintiff must have prevailed on the first issue, and at least some of the attorney time was presumably expended on the question of whether or not there was a support obligation at all. So I'm still hearing you say, oh, majority of the time is spent on the years which weren't successful, but I don't have any support for that, and logically, it doesn't follow. Well, your honor, on page 18 of my brief where it talks about there was the specific types of litigation, I kind of tried to break down what was primary... None of which is accompanied by any citation to the record. It's not our job to go digging out and try to figure out what could be looked at in the record to prove things, you know, so... Well, under one, for example, it actually talks about the record. It gives the location of it after every paragraph, or it talked about, for example, pages 226 to 229 and 225 to 179, and I tried to break down each paragraph under one where making reference to those items. So there are... I did reference those issues. Can I ask you this? One of the arguments you're making is that the district court's fee award was unreasonable because it wasn't applying the curve factors. Tell me what was... What was the district court supposed to do under an analysis of the curve factors that it did not do? Well, I think that one of the issues in this case as far as the curve factors are concerned was to... And I kind of went through the curve factors in my brief, and one of them was the difficulties of the questions, you know, actually involved, which I talked about that and the skill requisite to perform the legal services properly. And I think that... So our cases don't require a district court to go through every curve factor. But what is it about what the district court did here? As I see, I think it may be touched on one or two of the curve factors, or might have done something of that sort a little bit with the lodestar analysis. Why was that insufficient in your mind to require reversal? Well, I think it was insufficient in this because I think that the 900 hours, I think that one of the issues is comparing the award to the amount of the success in the litigation. And I think in this particular case, when you had... And let's just assume, I think that maybe we can say if there was a 50% success in the litigation in this particular case, and it ended up being $30,000, and then you have a seven times that amount in attorney fees. I mean, that's significant as far as the amount of attorney fees in this particular case. And for example, as they go through when the plaintiff's counsel, he hired an expert in this particular case, the counsel who was the one who was doing primarily most of the invoicing was not even the counsel who actually did the trial. I take it your argument is this case was not that hard. It should not have caused $250,000 in bills. Yes, sir. I definitely believe that's extreme. When you have $30,000, you're talking about parties who... We're talking about $30,000 over a period of the two years. It wasn't complete success. If the court finds that there was success, I'm not going to argue much more about that. But the fact that we're looking at seven times or eight times that amount for a three-day trial with one counsel, they met almost every day three lawyers to discuss a case where I believe that the lawyer who tried the case, and I'm not sure, but I believe that the lawyer who actually tried the case was not even involved in any of those meetings. It was a very short trial. Did you want to leave any time for rebuttal? I would, Your Honor. Thank you. Judge, I apologize for hopping up there earlier. I thought you were looking right at me. That's quite all right. My name is Greg McLawson. I represent the plaintiff at Polite. Thank you very much for the opportunity to come speak about this area of law that's become my exclusive practice area over the past decade. The court's no doubt aware that there are only three circuit-level public decisions in the whole country, the earlier decision being one of them, that touch on this area. And today is a really important opportunity to send a message and make sure that the affidavit of support is doing the job that Congress hired it to do in 1996. Well, that's not really what was fought over here, though, and doesn't seem to have had a lot to do with the dispute. I'll ask you the same question I guess I posed to your colleague. There seem to be two different questions here. One, the obligation to support, and second, the particular obligation as applied to this plaintiff based on the quantity of her earnings during each year. Is that how you perceive the case? I typically break it down slightly differently. I talk about these cases involving the facts pertaining to immigration sponsorship. Was the affidavit signed? Did the person get status? And then the second bucket of factual questions is exactly what you're saying. Was the first question seriously contested here? No. So the time expended had far more to do with the second question, not the unique issue that you've highlighted in terms of the support affidavit, but the earnings of this particular plaintiff. That's pretty routine litigation. Well, the income—I mean, the time expenditure doesn't really break down over five years of litigation into what the factual issues end up being at trial. You know, all of the procedural minutia that goes into five years of litigation, it's not limited to the factual issues that get disputed. Let me just be candid here. A $30,000 award plus some continuing obligation results in an attorney fee award of over a quarter million dollars when most of the litigation appeared to have to do with the particulars of this person and not upholding some broad principle that applies elsewhere? And this is exactly why Congress created a statutory attorney fee provision, because five years ago, we went to the defendant appellants and offered them the opportunity, which would be repeated a dozen times over the next five years, to resolve the case. We initially offered $45,000 plus $2,000 in fees. But an attorney fee award isn't to make a statement about an area of law. It's about the reasonable fees that were incurred if you prevail in a lawsuit. So it's not clear to me why okay, so you approached them five years ago, but what does making a statement have to do with whether there were reasonable fees incurred in this litigation? It's to make the rights that my client has meaningful, because if she can't retain counsel, she can't enforce her right to support. And we have the trial court going carefully through our billings. Well, let me follow up on that. In a way, yes, and in a way, no. It seems to me that the district court was very specific about certain areas where it was correcting miscalculations in some of the lodestar analysis. But there was nothing that I saw in that initial order that touched upon the reasonable hours expended and why it thought 900 hours was initial opposition to the fee motion. But between that order and the follow-up order that followed from the motion for reconsideration, I have yet to see on a lodestar basis why 900 hours is reasonable for this type of case. And so this is whether you consider it under lodestar analysis or curve factors, I take Mr. Ali's point that if there's no analysis as to how complicated this case is, why 900 hours was reasonable, what other awards in similar cases have been recovered, we're a little bit left in the dark as an appellate court to review the reasonableness of this order, aren't we? Well, we did brief the curve factors to the trial court. The trial court clearly went line by line through every single one of those 100 pages of billings. He took out clerical work. He didn't talk any place that I saw about value for results obtained. Can you point me to some place where the trial court reflected either in the written order or maybe there was a hearing? I guess probably there wasn't a hearing. As your honor pointed out, he did not go through all of the curve factors. He didn't go through any of them. He went through one. He went through contingency fee versus non-contingency. That's what I saw. And he found that the lodestar figure that we presented was reasonable. Based on what? Because you got to acknowledge that a quarter million dollars in fees for a $30,000 award, there are circumstances where that certainly has been affirmed by this court and should be. But you already acknowledged this wasn't upholding some broad principle. It had to do with the particulars of this plaintiff. And most of the plaintiff's claims did not appear to be successful. Well, there were only two claims, one against each plaintiff. How much was she seeking? Well, we originally proposed $45,000 in settlement. But what was she seeking in the litigation? What did you go to the jury with? Well, it's open-ended because we don't know. So the sky is the limit. And if the sky is the limit, you can justify a quarter million dollars of fees. But if your serious claim is $45,000, a quarter million fees, really? You took that much time? And the district court gave no discussion of that consideration at all? Well, Your Honor, this is in line with the Dorsinio case that came up to the Ninth Circuit. That was just under $100,000 in fees. And that was a case that got resolved on summary judgment. And this one went past summary judgment into a jury trial at the insistence of the appellants. But in our case law, whether it's McCown or Stanger or other cases, the district court has to give some sort of explanation that can be grounded in something in the record that we can understand. And while I understand some of what the court was getting at in terms of whether these were reasonable fees for the local area and experience of counsel, there are other things that I have no idea what the court thought about the 900 hours billed that resulted in $250,000 in an award. It seems like a painful exercise after the trial court has had two opportunities to look at the fee issue to remand it back for the trial court, which will doubtlessly do the same thing. We don't even know what standard the trial court applied. I mean, in the trial court's decision on the motion for reconsideration, it recites the standard of review for a motion for reconsideration. And you recite that in your brief. And yet the trial court acknowledged it completely missed the fact of the opposition that had been filed to the original motion. And you don't dispute that either. And so how exactly is the highly deferential standard for a motion for reconsideration applicable when the trial court failed to consider the opposition the first time around? Well, the first order was a mistake. And my inner law clerk got winced seeing this. But the court then did the right thing. Well, we don't know that, though, because the court, in doing the right thing and denying the motion for reconsideration, recites the standard of review for a motion for reconsideration and does not acknowledge or say any place that he's not applying that standard, which plainly wouldn't fit in a case where the court itself had missed the fact of the opposition the first time around. So we don't know if he was evaluating the motion the way he was supposed to the first time around or not, do we? Well, the court says specifically, I am now considering the opposition. Yes, immediately after he recited the standard of review for a motion for reconsideration, which you repeated in your brief. So I don't see anybody acknowledging that, yeah, this isn't the right standard to apply here. I see the court reciting it, you repeating it. And that's not a standard that's appropriate under these circumstances. Maybe I'm misunderstanding. But I believe the court says, I understand I made a mistake. I didn't consider the opposition, which is the basis. He did. He clearly acknowledged it. But he does that immediately after having in the same minute order a recitation of the standard for a motion for reconsideration. So when he later says, oops, I missed the opposition. I'm considering it now. How can we be confident he's considering it not under the standard he just recited in the same order, but under the standard that he should have applied in the first place? And you can't be confident of that, because in your brief to us, you give us the standard for a motion for reconsideration as if that's the one that's supposed to be applied. Do you think that's the motion that's supposed to, or the standard that's supposed to be applied? No, Your Honor. I think the standard is the abuse of discretion standard that applies to court orders on fees generally. But we don't even know that the court applied that standard, because it recited a different standard, and your brief recited a different standard. It is a short order. This is a trial court operating at the absolute height of its discretion, having been involved in the day-to-day of a five-year piece of litigation. It would be one thing if the order on reconsideration actually engaged in the arguments that had been made in the opposition about how simple or difficult was this case, other curve factors. Why were there four attorneys and eight timekeepers on the records for this type of case? How does it compare to other cases? It didn't do any of that. And so, you know, to Judge Clifton's point, we're left wondering what the court was basing its decision on, whether it was applying the right legal standard, and what it determined was appropriate about the 900 hours billed. I sympathize where you're coming from since you briefed those issues as well. That part is through no fault of your own. You're holding up your end of your analysis, but that's not sufficient in my mind for a review of an attorney fee award. I'm not aware of the appellant having cited any Ninth Circuit authority for the proposition that there has to be anything more detailed than what was presented here. Well, I'm citing it. McCown, Stangler, there are numerous cases where if the court does not give adequate explanation for the basis for its award, we reverse and remand for a do-over. Well, this is the appellant's burden here to present some sort of smoking gun issue about how the court abused its discretion. And we haven't heard anything yet. I think we've heard a lot. I think we've said a lot. I mean, it's a hard question how you support more than a quarter million dollars of fees in this case where the jury award was $30,000. And we itemized that down to the six-minute interval. And you asked the appellant's attorney to say, point me to where in those billings there's a bunch of wasted time. And there wasn't an answer. It's not this court's job to go do that sort of thing. Well, it's the district court's job. And we don't know where the district court did that. Let me switch gears for a second. I realize there's a lot of backstory here that we're not engaged with. And obviously, the factual circumstances here are unfortunate. But had there been recent efforts between the parties to try to resolve whatever disputes are still out there and walk away? Because I just see a bottomless pit of money being poured in. And there'll be a big chunk of that poured into relitigating this fee issue if we have to go back down to the trial level. So have there been any recent efforts? Or is mediation appropriate at this point? I reached out to the opposing party last week and asked if there was a chance of talking before we showed up today. And here we are. OK, here we are. Now you've heard whatever you can hear. Our court has a mediation office that's frequently successful in resolving cases. This one, I say, it's more than pure dollars and cents because there are no doubt feelings amongst the parties. But the feelings are resulting in the expenditure of a whole lot more money. And so we can talk. But basically, if the parties are interested in utilizing the services of our mediation office or anybody else and want us to put this on hold for a while, please inform us promptly. Otherwise, we try to wind cases up pretty quickly. Many of these do result in a mediated settlement. I was in El Paso last week. And the reason it settled was the magistrate dredge wrote down on his legal pad $254,000, took it into the other room, and the other side got real serious about putting a number on the table. And we settled two hours later. So that's the policy implication of why an actual fee award is important. Any other questions? I will rest my mouth. Thank you. Thank you. Do you have a final word, Mr. Ali? Thank you, Your Honor. I really don't have too much more, I think, to win. I don't have a lot of input unless Your Honors have any specific questions for me. Well, let me go ahead to the subject I just touched upon. Do you have any information as to your client's interest in pursuing, either through mediation or otherwise, settlement efforts before we render a decision? Your Honor, I actually did speak with my clients because counsel did reach out to me about resolving the matter with the judgment as it is and to make up some sort of payment plan, but my client, who I think they're even still going through a family law matter right as we speak, really doesn't have the money. And that's what she's concerned about is, you know, I don't know how close we can get. I'm sure that she's willing to try, but it is an issue of, you know, her finances. Well, if she's not interested, we can't make her be interested. Let me make one other observation, which is that I find it difficult to understand why the parties can't reach a resolution, particularly when the question seems to so much turn on the ability of the plaintiff to earn, what, 125 percent of the poverty line at a time when I go down the street and I'm overwhelmed by the number of help wanted signs I see. This is just odd under these economic circumstances, and I would hope the parties could figure that out. They have distress, but they ought to leave that distress behind and figure out a way to solve their problems, otherwise it's going to cost them a whole lot more. Yes, sir. I appreciate that. I agree. But. Well, if your client doesn't have all the money, you could discuss a plan by which she pays it over time. I will. I can speak with her about it. Okay. All right. Thank you, Mr. Ali. Thank you, Your Honor. I appreciate it. The matter will stand submitted. Thank you, counsel, for your arguments.
judges: CLIFTON, SANCHEZ, Korman